**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SIESTA SOL, LLC,<br>Plaintiff<br><br>v.<br><br>BROOKS PHARMACY, INC.,<br>Defendant | C.A. No. 05-401 S |

**AFFIDAVIT OF TIMOTHY PORTER**

I, Timothy Porter, under oath do depose and state as follows:

1. I am employed at The Jean Coutu Group (PJC) USA ("Jean Coutu").

2. Jean Coutu, through subsidiaries, operates the Brooks Pharmacy chain (collectively, Jean Coutu and Brooks will be hereinafter referred to as "Brooks").

3. On July 31, 2004, Jean Coutu acquired Eckerd Corporation, another pharmacy chain.

4. My title is Associate Category Manager for the apparel product line. In this capacity, I report to Donald Poitras.

5. Mr. Poitras is the Category Manger for the apparel product line.

6. Mr. Poitras and I are responsible for all apparel products ordered for sale in Brooks Pharmacy stores and we were put in charge of apparel products for Eckerd stores upon Jean Coutu's purchase of Eckerd.

7. I am familiar with Siesta Sol. It was an Eckerd apparel vendor at the time Jean Coutu purchased Eckerd in July of 2004.

8. Mr. Poitras met with Siesta Sol in November of 2004. This was a "meet and greet" type meeting. We were meeting with all Eckerd vendors during this time. Brooks allowed Siesta Sol to continue to supply apparel to Eckerd stores through 2004.

9. In January of 2005, Brooks asked Siesta Sol to propose a line of Spring apparel. Siesta Sol presented a line of Spring merchandise. Exhibit 1.

10. We were required to provide written confirmation of our order. See Exhibit 2. I did so. Exhibit 3.

11. On February 23, 2005, I met with Rich Kaplan from Siesta Sol and Bill Eltschlager of B&P Sales. This meeting took place at the Brooks offices in Warwick, Rhode Island. The purpose of this meeting was to learn more about Siesta Sol's products and business practices. During the course of this meeting, I learned a bit of the history that Siesta Sol had with Eckerd. I was also presented with a sample of a ladies lace spaghetti strap top that we later ordered.

12. As with our spring order, we were required to confirm this order in writing. Exhibit 4.

13. I am aware that Siesta Sol alleges that I committed to purchasing a fall and/or holiday line of products from Siesta Sol for Eckerd stores for 2005. This is not true. There was only a general discussion of the prospects for Siesta Sol's future business with Brooks. At no time did I commit to purchasing anything from Siesta Sol. There was never any specific discussion of a fall or holiday product line. I was never provided with a catalog of fall or holiday merchandise, I never selected any products, I never discussed or agreed upon purchasing any set quantities of products, and I never discussed or agreed to purchase any dollar value or set any price on any merchandise.

14. On May 6, 2005, I received an email from Bill Eltschlager seeking a meeting to discuss ideas for a fall program.

15. I replied on May 9, 2005, suggesting that this meeting take place in mid-June because we were still in the process of evaluating what vendors we wanted to use. See Exhibit 5.

16. On May 11, 2005, I received an email from BP sales asking to discuss our commitment to future apparel programs. Clearly, we had not committed to anything at that point, and the email acknowledges that Siesta Sol had not even come up with their programs to show us. I am surprised Siesta Sol believed we had committed to anything considering it had not even gotten to the point of presenting us with options to consider. See Exhibit 6.

17. I notified BP on May 12, 2005 that Siesta Sol should continue with its current programs (the spring and lace top programs in production, plus a direct program whereby individual stores could call Siesta Sol directly to ordered product from an approved list). I also told them the program in development (which is what we were still evaluating) was geared to all the stores (meaning both Eckerd and Brooks). Siesta Sol was complimenting that program and would continue to do so through its spring and lace programs and, until notified otherwise, its DSD program.

18. On May 24, 2005, Brooks management decided not to continue to use Siesta Sol as a DSD vendor or as a vendor on a company-wide basis. This was communicated to Richard Kaplan of Siesta Sol via conference call on May 26, 2005.

Timothy Porter

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence, in said County, on this 6TH day of July, 2006, before me personally appeared the above-named Timothy Porter, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him so executed to be his free act and deed and he acknowledged that the information contained therein is true and accurate to the best of his knowledge, information and belief.

Notary Public
My Commission Expires: 12-31-07

**ROLAND H. SASSEVILLE**
**NOTARY PUBLIC**
**STATE OF RHODE ISLAND**

864248