***UNITED STATES DISTRICT COURT***
***DISTRICT OF RHODE ISLAND***

SIESTA SOL, LLC

-V- No. 05-401S

BROOKS PHARMACY, INC.

***PLAINTIFF'S STATEMENT OF***
***DISPUTED AND/OR UNDISPUTED FACTS***

Now comes Plaintiff, Siesta Sol, LLC ("Siesta Sol) and, pursuant to Fed. R. Civ. Procedure 56(c) and LR Cv 56, files it Statement of Disputed and/or Undisputed Facts.

**A. Disputed Facts Alleged by Brooks.**

Brooks Pharmacy, Inc. ("Brooks") filed a statement containing fifteen (15) Statements of alleged Undisputed Facts.

1. Siesta Sol does not deny or controvert Brooks' statements 1-6, 9, and 13-14.

2. Siesta Sol disputes Brooks' Statement of Fact 7. Brooks did not "allow" Siesta Sol to continue to supply apparel to Eckerd through 2004. Siesta Sol had a binding agreement with Eckerd, which Brooks, as successor, was obligated to fulfill. Kaplan Aff., ¶ 12.

3. Siesta Sol disputes Brooks' Statement of Fact 8 to the extent that it implies that Timothy Porter, who Brooks admits is responsible for purchasing apparel for Brooks, Brooks' Statement of Undisputed Fact 6, was not authorized or invested with apparent authority to contract with Siesta Sol for purchases under the seasonal apparel program. Porter did contract for Brooks for purchases under the seasonal apparel program for Brooks with Siesta Sol for the balance of 2005. Kaplan Aff., ¶ 12.

4. Siesta Sol disputes Brooks' Statement of Fact 10 to the extent that it misstates Siesta Sol's allegation. On February 23, 2005, Mr. Porter entered into an agreement, on behalf of Brooks,

for the purchase of summer, fall and holiday seasonal apparel, not just fall and holiday. The summer seasonal apparel was purchased pursuant to and in accordance with the February 23, 2005 agreement. Kaplan Aff., ¶ 12, 14.

5. Siesta Sol disputes Brooks' Statement of Fact 11 in that it mischaracterizes the course of events. Brooks entered into an agreement with Siesta Sol on February 23, 2005 and both parties were carrying out the agreement. Kaplan Aff., ¶ 14. On May 9, 2005, Mr. Porter wrote that the apparel program is still in development, seemingly contrary to his statement on February 23 that Siesta Sol would be the supplier for the program for all of 2005. Kaplan Aff., ¶ 15. On May 12, 2005, Mr. Porter confirmed to Siesta Sol, through e-mail to B & P Sales, that Siesta Sol would remain as the supplier for the programs. Kaplan Aff., ¶ 16, Exh. 5.

6. Siesta Sol disputes Brooks' Statement of Fact 12 in that by May 12, 2005, the summer apparel program had already been shipped. Kaplan Aff., ¶ 14. The confirmation that B & P Sales had asked for regarding the balance of 2005 was given when Mr. Porter confirmed that Siesta Sol would remain as a supplier to Brooks. Kaplan Aff., ¶ 16.

7. Siesta Sol disputes Brooks' Statement of Fact 15. Siesta Sol, through Richard Kaplan and Bill Eltschlager, met at length with Mr. Porter on February 23, 2005, presented samples for all the seasonal apparel programs for 2005, discussed quantity, price and other terms for all the seasonal programs, including fall and holiday season apparel. Kaplan Aff., ¶ 11. Brooks confirmed the agreement for the balance of 2005. Kaplan Aff., ¶ 12.

**B. Siesta Sol's Statement of Facts.**

1. Richard Kaplan is President, Chief Executive Officer and owner of Siesta Sol, LLC. Kaplan Aff., ¶ 1.

2. Beginning in 2001, Siesta Sol had as its major customer Eckerd Stores, selling seasonal apparel products to it for distribution to Eckerd stores in many eastern and southeastern states. Kaplan Aff., ¶ 3.

3. Annual plans were presented to Eckerd category managers to keep in-store four-way fixtures in the 1,406 Eckerd Stores supplied by Siesta Sol stocked with seasonal apparel, such as printed tee-shirts, long-sleeved shirts and other items. Kaplan Aff., ¶ 4.

4. The business for the year between Siesta Sol and Eckerd was agreed upon at annual meetings with Eckerd and correspondence was exchanged and meetings held as needed to service the Eckerd account during the year from 2001 through 2004. The core items of on-going programs were repeated each year. Kaplan Aff., ¶ 5.

5. In or about August 2004, a large number of Eckerd Stores were sold to Defendant Brooks Pharmacy, Inc. ("Brooks"), and Siesta Sol was told that business with Eckerd would continue, which it did. Kaplan Aff., ¶ 6.

6. In late January, Brooks had requested information from Siesta Sol for the spring 2005 apparel program. B & P Sales, the sales representative for Siesta Sol, sent the requested information to Brooks, specifically Timothy Porter and his immediate superior, Don Poitras. B & P Sales also invited Brooks to discuss the apparel programs for the balance of 2005 and described the summer apparel program from the proceeding year. Kaplan Aff., ¶ 9.

7. Brooks requested a meeting with Siesta Sol and B & P Sales at Brooks' Warwick, Rhode Island, headquarters for late February 2005. Kaplan Aff., ¶ 10.

8. In response to Brooks' request for the meeting, Bill Eltschlager and Richard Kaplan met with Tim Porter of Brooks on February 23, 2005. In the meeting, which lasted over three hours, Siesta Sol reviewed the planned business for Siesta Sol with Brooks for calendar year 2005. The core business included the spring apparel program, which had already commenced, as well as the summer, fall and holiday programs. Samples were shown and discussed. Siesta Sol presented to Brooks a "Year at a Glance" document, detailing the items to be sold, price, shipment dates and other information. Kaplan Aff., ¶ 11.

9. Mr. Porter, on behalf of Brooks, said at the February 23, 2005 meeting that the quantities would have to be the same as in the past so that Siesta Sol's four-way fixtures would be fully stocked. Mr. Porter made it clear that Siesta Sol would be the vendor for the 1,406 Eckerd Stores for the remainder of the year, those being the same 1,406 stores supplied by Siesta Sol in the spring 2005 apparel program. Mr. Porter was also clear that another company was supplying Brooks stores other than the 1,406 stores being serviced by Siesta Sol and that 2006 business was not assured for Siesta Sol but would be based on the 2005 performance. Mr. Porter intended that Siesta Sol act in accordance with Brooks' commitment to Siesta Sol for calendar year 2005. Kaplan Aff., ¶ 12.

10. Brooks told Siesta Sol and wrote Siesta Sol that the business dealings between Siesta Sol and Eckerd would "stay the same" for 2005 as between Siesta Sol and Brooks. Kaplan Aff., ¶ 13.

11. Pursuant to and in accordance with the agreement reached on February 23, 2005, Siesta Sol supplied Brooks' 1,406 Eckerd Stores with the summer apparel program merchandise in March and April 2005, in the quantities and prices and numbers of stores as agreed at the February 23, 2005 meeting. This was the same summer apparel program as in past years.

The February 23 meeting solidified the relationship between Siesta Sol and Brooks for calendar year 2005. Kaplan Aff., ¶ 14.

12. On May 9, 2005, Tim Porter wrote that the apparel program was "still in development," contrary to what was said by him on February 23, 2005. In response, Bill Eltschlager of B & P Sales wrote, "When Rich and I met with you on February 23, we had the understanding that we would be the supplier for all of these programs this year. Is this correct?" Mr. Porter confirmed that Siesta Sol would be the supplier for the year. Kaplan Aff., ¶ 15, 16.

13. On May 12, 2005, Brooks, through Tim Porter, clarified and confirmed to Siesta Sol that Siesta Sol would remain a part of the seasonal apparel program for Brooks for the 1,406 Eckerd Stores, just as Siesta Sol had been for the first part of 2005. Kaplan Aff., ¶ 16.

14. Porter's correspondence of May 12 confirmed that Siesta Sol would continue to fill its four-way fixtures at the 1,406 Eckerd Stores for the balance of the year, while Brooks was dealing with other vendors for programs complimentary to the Siesta Sol apparel programs. This was consistent with the discussion and commitment made by Brooks at the February 23, 2005 meeting. As of May 12, 2005, Siesta Sol had shipped the summer program, so the future programs had to refer to fall and holiday apparel programs. Kaplan Aff., ¶ 17.

15. In furtherance of Siesta Sol's obligation to comply with program requirements for the fall seasonal apparel program, Siesta Sol expended approximately $62,000 from March 1, 2005 through May 26, 2005. This was pursuant to and in accordance with the February 23, 2005 agreement and confirmations that things would "stay the same" for Siesta Sol for 2005 as well as the logical outcome of the shipment of the summer apparel program in March and April 2005. Kaplan Aff., ¶ 18.

16. On May 26, 2005, contrary to the commitment made February 23, 2005, and confirmed on May 12, 2005, Brooks advised Siesta Sol that Siesta Sol did not fit into Brooks' plans and that they would not accept the fall or holiday apparel programs from Siesta Sol, although Siesta Sol received re-stocking orders on the summer apparel program until June 24, 2005. Kaplan Aff., ¶ 20.

17. Siesta Sol relied on having business from Brooks for entire calendar year 2005. Kaplan Aff., ¶ 19.

18. On or about June 10, 2005, Don Poitras of Brooks admitted to Siesta Sol and Rich Kaplan in particular that "we (Brooks) may have misled you." Kaplan Aff., ¶ 21.

SIESTA SOL, LLC

By its attorneys,

/s/ Robert D. Fine

Robert D. Fine, Esq. (#2447)
Douglas J. Emanuel, Esq. (#5176)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
Phone: (401) 453-6400
Fax: (401) 453-6411

## *CERTIFICATE OF SERVICE*

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 27, 2007.

/s/ Robert D. Fine